BROOKLYN DOCK & TERMINAL CO. v. BAHRENBURG et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. LANDLORD AND TENANT (§§ 5, 90*)—TERM—RENEWAL.
    A contract granting room on a dock for a year for the maintenance of an ice bridge and office for a stipulated rental, with a provision for renewal on notice, creates the relation of landlord and tenant, and the mere continued enjoyment of the privileges conferred, after the expiration of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the year, without formal notice or renewal, constitutes a holding over such as will impose on the tenant the obligation of an additional term.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 3–12, 284–289; Dec. Dig. §§ 5, 90.*]

2. LANDLORD AND TENANT (§ 231*)—RENT—ACTIONS—EVIDENCE.

Evidence *held* insufficient to show an agreement for reduction in the amount of rent to be paid.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 231.*]

Appeal from Trial Term, Kings County.

Action by the Brooklyn Dock & Terminal Company against C. H. Bahrenburg and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, JENKS, and THOMAS, JJ.

Henry Wetherhorn, for appellants.

E. H. Wallace, for respondent.

HIRSCHBERG, P. J. As the learned counsel for the appellants states in his brief, the facts in the case are practically undisputed. The judgment is for the unpaid balance of rent which fell due during the second year of the defendants' occupancy. The parties executed a contract on the 1st of March, 1900, which by its terms is called a lease, and by which the plaintiff granted to the defendants for the period of one year from the date mentioned, on certain dock property in the borough of Brooklyn, room for the maintenance of an ice bridge and ice scales and an office to be constructed, maintained, and kept at the expense of the defendants, the location to be agreed upon between the parties. It was agreed that within one month after the expiration of the lease the defendants should remove the ice bridge and scales, fill in the excavation, and pave the same, thereby restoring the property to substantially the same condition as at the time of the execution of the lease. The rent was to be at least $2,700 per year, payable monthly; the defendants agreeing to pay at the end of each month at the rate of 18 cents per net ton for all the ice which should be landed by them at the dock during the preceding month, the balance of the rental to be paid one year from the date of the lease, or from the date of each renewal. The contract provided that the defendants should have the privilege of renewing the lease for one, two, or three years thereafter on giving notice of the intention to renew in writing on or before the 1st day of each February. The defendants retained possession of the property for the period of two years without any formal notice or renewal, and the amount for which the judgment has been entered is the balance of rent unpaid for the second year.

The main point presented by the appellants is that the relationship established between the parties was not that of landlord and tenant, and that the mere continued enjoyment of the privileges provided by the contract, after the expiration of the first year, did not constitute a holding over such as would impose upon the appellants the obligations of an additional term. I do not think the contention sound. The cases cited in its support are those in which the occupation was that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of a mere licensee, such as Goldman v. N. Y. Advertising Co., 29 Misc. Rep. 133, 60 N. Y. Supp. 275, and Manheimer v. Gudat, 55 Misc. Rep. 330, 106 N. Y. Supp. 461, where the privilege conferred was only that of using the wall of a building for advertising purposes. Chase v. Second Avenue Railroad Co., 97 N. Y. 384, 49 Am. Rep. 531, is another case of the same character. There the lease conferred only the privilege of placing advertisements in cars belonging to the defendant. It was held that the defendant was not bound to permit the plaintiff to keep his advertisements in the cars after the expiration of the contractual period. Referring to the plaintiff's claim that by holding over he was entitled to a renewal of the privilege for another term, the court said (page 389 of 97 N. Y. [49 Am. Rep. 531]):

"If the cars had been real estate leased to him, his claim would have foundation. A tenant of real estate, permitted to hold over after the expiration of his tenancy, may hold for another year upon the same terms. The landlord has his option to treat the tenant as a trespasser or as a tenant for another year. But if he takes rent, or otherwise assents to the holding over, then the tenant has the rights of a tenant for another year. Schuyler v. Smith, 51 N. Y. 309 [10 Am. Rep. 609]. These are technical rules applicable to real estate, which have never been applied to personal property, and so it was held in Chamberlain v. Pratt, 33 N. Y. 47."

The case is not controlled by the fact that no formal written notice of the intention to renew was served. It is sufficient that the defendants remained in possession, continuing to exercise the rights and privileges conferred. That they could be held for a renewed term in those circumstances has been frequently decided; the most recent expression being contained in the case of Kennedy v. City of New York, 196 N. Y. 19, 23, 89 N. E. 360, 361. The court said:

"A tenant who holds over after the expiration of a definite term for a year or years may be treated by his landlord as a trespasser, or as a tenant from year to year. If the landlord elects to treat the tenant as holding over for another year, the conditions of the original lease apply, except as to duration. Haynes v. Aldrich, 133 N. Y. 287 [31 N. E. 94, 28 Am. St. Rep. 636]; Adams v. City of Cohoes, 127 N. Y. 175 [28 N. E. 25]. Under such a holding over a tenant is bound for another year, not by virtue of an express contract, but by implication of law springing from the circumstances. Herter v. Mullen, 159 N. Y. 28, 43 [53 N. E. 700, 44 L. R. A. 703, 70 Am. St. Rep. 517]. The only logical deduction from the choice thus given to the landlord of treating a holdover tenant either as a trespasser or as a tenant for another year is that each holding over, where acquiesced in by the landlord, constitutes a new term, separate and distinct from those which preceded it, and related to each other only in the conditions of the original lease which the law reads into the new tenancy. Some of the text-writers and a few of the earlier decisions seem to have confused the subject by referring to tenancies from year to year, arising by operation of law, as continuations of the original terms, when it would have been more correct to characterize them as new tenancies subject to the original conditions. The later decisions in this court have, however, defined this species of tenancy with a precision that admits of no misunderstanding. In the case of United M. Realty & Impr. Co. v. Roth, 193 N. Y. 570, 576 [86 N. E. 544, 545], it was held, upon the opinion of Chief Judge Cullen, that 'the right of the landlord to treat the holdover as a tenant for a new term does not spring from the contract of the parties, but is the penalty imposed by law upon the trespassing tenant.' The same view was expressed in Judge Vann's dissenting opinion in the following language: 'Owing to the previous relations between the parties, the law implies a renewal of the obligations dependent on those relations which measure every detail of the new contract.' Page 579 [of 193 N. Y., page 546 of 86 N. E.]. In the earlier case of Laughran

v. Smith, 75 N. Y. 205, 210, it was stated to be the settled rule that where a tenant enters under a lease for a year, and holds over after the expiration of the term, 'the law, from the continuance of the possession, implies a contract on the part of the tenant to renew the tenancy for another year, on the terms of the original holding.' And to the same effect is Schuyler v. Smith, 51 N. Y. 309 [10 Am. Rep. 609]."

The learned trial court was also correct in directing a verdict based upon the rental as stipulated in the original contract. The defendants claim to have made a verbal renewal with one Vreeland, by which the amount of rent for the second year was to be limited to the amount of ice actually handled by the defendants. There was no proof of authority on the part of Mr. Vreeland to so modify the written contract. He was not an officer of the plaintiff, nor even a director at the time. He was a mere employé; and there was no proof that the conversation had by the defendants with him was reported to the plaintiff. The conversation did not amount to a contract, nor did it take the form of a valid reduction in the rent. The representative of the defendants testified that he had a conversation with Mr. Vreeland in the latter part of the year 1900, in which he stated that the defendants would pay the next year upon what business was actually done, and that Mr. Vreeland replied: "As far as I am concerned, I have no objection to that." He further testified that Mr. Vreeland said that "it was all right so far as he was concerned." That no actual agreement was made for a reduction in the amount of rent is manifested by the fact that when, after the termination of the second year, written demand was made for the payment of the rent, the defendants' same representative wrote to the plaintiff in reply, without suggesting that a reduction had been agreed upon, but merely stating:

"We entered into an agreement for one year, and at the expiration of this year we did not renew our agreement, nor were we asked to have same renewed, but simply continued doing business there."

Other points are raised on the appeal that I do not think require detailed consideration.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.